ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| HUGO CABRERA UMPIERRE<br><br>Apelado<br><br>v.<br><br>WINDMAR PV ENERGY, INC. (H/N/C WINDMAR HOME)<br><br>Apelantes | TA2025AP00688 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV11695<br><br>Sobre: Daños y Perjuicios; Incumplimiento de Contrato |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de mayo de 2026.

Compareció Windmar P.V. Energy, Inc., (en adelante, Windmar o apelante), mediante recurso de *Apelación* presentado el 18 diciembre de 2025. Nos solicita que revoquemos la *Sentencia Parcial* que emitió y notificó el Tribunal de Primera Instancia, Sala de San Juan, el 18 de noviembre de 2025. En el dictamen, el foro primario declaró *Ha Lugar* la *Moción en Solicitud de Sentencia Sumaria* que presentó el Sr. Hugo Cabrera Umpierre (en adelante, señor Cabrera Umpierre o apelado).

Por los fundamentos que esbozamos a continuación, confirmamos.

**-I-**

Los hechos que originaron la causa de epígrafe se retrotraen al 22 de septiembre de 2021, cuando el señor Cabrera Umpierre suscribió un contrato con Windmar, mediante el cual adquirió un

sistema fotovoltaico para su residencia, situada en la Urb. Santa María en San Juan, por el precio total de $74,029.41.[1]

La instalación de dicho sistema en la vivienda del apelado ocurrió el 8 de febrero de 2022.[2] Sin embargo, dos semanas después el señor Cabrera Umpierre y su pareja, la Sra. Vibiana Vega (señora Vega) se percataron que el techo tenía una filtración de agua, justo debajo donde se instaló el equipo de placas solares.[3] Según surge del expediente, la filtración empeoraba con cada evento de lluvia y, posteriormente, se extendió a otras zonas de la casa.

Como consecuencia, la parte apelada informó que llamaron a Windmar para presentar su reclamación mediante el protocolo interno que provee la empresa para esos fines. Así, ante la recurrencia del problema, el señor Cabrera Umpierre y la señora Vega presentaron su queja en nueve (9) ocasiones.[4]

Con el propósito de atender sus peticiones, Windmar abrió una reclamación (*ticket* #22755), en la que anotó la queja de la pareja y la clasificó como un *Leak/Roof Sealing*.[5]

También, abrió el *ticket* #22868, en el que informó los siguientes hallazgos:

> i. Brigada en instalación taparon canal de desagüe de l[a] casa pudiéndose hacer por otro lugar. . [sic] **no se pudo hacer nada ya que necesitamos más personal** plus estaba mojado **al parecer brigada perforó tubo eléctrico y baja agua por roseta**. . [sic] se necesita más personal para mover placas para sacar agua y echarle tratamiento a todas las patas ya que **no le echaron tratamiento en la parte de atrás [de] las patas**.[6] (Énfasis suplido).

Debido a que Windmar no logró solucionar el problema, en abril de 2022, el señor Cabrera Umpierre y la señora Vega se comunicaron nuevamente con Windmar para reclamar la resolución

---

[1] Véase, Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (en adelante, "SUMAC-TPI"), entrada núm. 36, anejo 1.
[2] SUMAC-TPI, entrada núm. 36, anejos 2, 3 y 4.
[3] SUMAC-TPI, entrada núm. 36, anejos 2 y 3.
[4] *Id.*
[5] SUMAC-TPI, entrada núm. 36, anejo 5.
[6] SUMAC-TPI, entrada núm. 36, anejo 6.

de su queja.[7] Así las cosas, el 25 de abril de 2022, Windmar abrió el

*ticket* 27386 en el que consignó lo siguiente:

> i. **Queda pendiente arreglar la ro[s]eta del techo. Y ver si no dañaron la tubería.** Se necesita una escalera tipo A lo suficientemente grande para llegar a esta ya que el techo tiene en esa área más de 20 pues aproximadamente y no hay de donde apoyar la escalera regular. **Es probable que el agua esté corriendo por dentro de la tubería eléctrica.** Se entiende que el trabajo realizado hoy evite o minimice la acumulación y *percolation* del agua pero aún está la preocupación si hubo algún daño eléctrico.[8] (Énfasis suplido).

En mayo de 2022, un equipo de Windmar visitó nuevamente la residencia del apelado para resolver la situación. Esta vez, la brigada aplicó un "sellado" para corregir la zona afectada. Sin embargo, las filtraciones continuaron.[9]

Un mes más tarde, Windmar abrió el *ticket* #31644 en el que se consignó que el problema de filtración persistía.[10] En atención a este reclamo, el personal de Windmar visitó nuevamente la residencia del apelado e informó lo siguiente:

> Detalles del problema: Se procedió a visitar nuevamente al cliente ya que este indicó en oficina que la filtración por el área de la ro[s]eta continúa. Hago constar que ya se ha visitado en varias ocasiones y se instalaron botas en todos los ranchos de las placas. [...]. No se pudo encontrar ningún problema con fisuras o grietas en el techo aunque el techo necesita mantenimiento pero no de urgencia. No se pudo realizar ningún trabajo adicional al ya realizado. Actualización del 8/1/22: Se inspeccionó el techo con problemas y se encontraron solo 2 áreas del tratamiento que estaban deterioradas. Se corrigieron las áreas más se resellaron botas adicionales que se encontraron sin sellador. Trabajo realizado: Se inspeccionó en el interior de la residencia para verificar escapes. Se le solicitó al cliente los planos eléctricos para verificar rastreo de tuberías pero el cliente indica que no existe plano eléctrico de la residencia. Se recomendó al cliente que de surgir nuevamente el problema, llame a la brigada de sellado para abrir la caja por donde se encuentra el salidero de agua y así poder rastrear la tubería exacta por donde está entrando el agua a la caja eléctrica.[11]

El problema de filtración persistió. Así, ante el agravamiento de la situación, sin una solución aparente por parte de Windmar, el

---

[7] SUMAC-TPI, entrada núm. 36, anejos 2 y 3.
[8] SUMAC-TPI, entrada núm. 36, anejo 7.
[9] SUMAC-TPI, entrada núm. 36, anejos 2, 3 y 8.
[10] SUMAC-TPI, entrada núm. 36, anejo 9.
[11] *Id.*

señor Cabrera Umpierre contrató los servicios del perito Ramón L. Pérez Torres, para que evaluara el problema. Como parte de su investigación, el señor Pérez Torres determinó que el anclaje de las placas solares perforó el tubo eléctrico del techo, por lo que era necesaria su reparación, entre otras recomendaciones.[12]

El perito estimó el costo de la reparación en $10,444.19. Además, la evaluación del perito tuvo un costo de $4,794.95.[13] También, se informó que luego de las reparaciones sería necesario la aplicación de un sistema de sellado a un costo de $26,565.00.[14] Sin embargo, el apelado no pudo corregir la situación, debido a que la cláusula 11 del contrato le impide la contratación de un tercero no autorizado por el vendedor, ya que conllevaría la pérdida de la garantía del sistema fotovoltaico adquirido.[15]

Ante la persistencia del problema y la insatisfacción con el manejo de la situación por parte Windmar, el señor Cabrera Umpierre presentó una *Demanda* contra Windmar el 19 de diciembre de 2023, por alegado incumplimiento de contrato y daños y perjuicios.

Windmar presentó su *Contestación a Demanda* el 25 de marzo de 2024. En su escrito, negó la negligencia imputada y levantó como defensas afirmativas, entre otras, que respondió a los reclamos del apelado y que este no mitigó los daños. [16]

Después de varios trámites procesales, el señor Cabrera Umpierre presentó una *Moción en Solicitud de Sentencia Sumaria*, en

---

[12] SUMAC-TPI, entrada núm. 36, anejos 11 y 12.
[13] SUMAC-TPI, entrada núm. 36, anejo 11.
[14] SUMAC-TPI, entrada núm. 37, anejo 17.
[15] SUMAC-TPI, entrada núm. 36, anejo 1. Dicha cláusula especifica lo siguiente:
   GARANTÍAS. [...].
   Cualquier trabajo o mantenimiento no autorizado por el VENDEDOR que se efectúe al sistema, invalidará la garantía de la mano de obra del VENDEDOR. VENDEDOR incluye una garantía limitada de 10 años para la operación y mantenimiento del sistema fotovoltaico. Esta garantía limitada de 10 años cubre hasta 2 visitas de mantenimiento reactivo por año para verificar el sistema solar sin cargo de mano de obra.
[16] SUMAC-TPI, entrada núm. 13.

la que sostuvo que no existe controversia sustancial sobre los hechos materiales del caso.[17] Aduce que, de la prueba sometida, surge la negligencia incurrida por Windmar, al instalar el sistema de placas solares en su residencia, al igual que el incumplimiento de las obligaciones contractuales y los daños ocasionados.

En consecuencia, solicitó al foro de instancia declarara ha lugar su petición sumaria y determinara que Windmar es responsable por el incumplimiento contractual y la negligencia incurrida en la instalación del sistema de placas solares. Además, solicitó que se ordene la remoción del sistema para reparar el techo sin perder la garantía. Por último, exigió el pago por el total de los daños ocasionados que estimó en $81,350.14.

En desacuerdo, Windmar presentó su *Oposición a Solicitud de Sentencia Sumaria*, en la que expuso que no procedía la petición sumaria, por existir controversias sustanciales sobre los hechos materiales.[18] Sostuvo que el apelado no proveyó evidencia admisible que sustentara los elementos fundamentales de su reclamación. Además, arguyó que el señor Cabrera Umpierre afectó la garantía pactada, al aplicar un tratamiento al techo de su casa, sin coordinar con Windmar.

El señor Cabrera Umpierre replicó a la oposición a su petición de sentencia sumaria, en la que reiteró su posición.[19] No obstante, adujo que Windmar no controvirtió, con prueba admisible, los hechos enumerados por el apelado en contravención a la Regla 36 de Procedimiento Civil, *infra.*

Así, después de evaluar las posiciones de todas las partes, el 18 de noviembre de 2025, el tribunal apelado dictó *Sentencia Parcial.*[20] Como parte de su dictamen consignó 61 hechos esenciales

---

[17] SUMAC-TPI, entrada núm. 36.
[18] SUMAC-TPI, entrada núm. 45.
[19] SUMAC-TPI, entrada núm. 49.
[20] SUMAC-TPI, entrada núm. 51.

no controvertidos, que acogemos y hacemos formar parte de esta *Sentencia*. Así pues, en consideración a estos y a la prueba documental sometida, declaró Ha Lugar la *Moción en Solicitud de Sentencia Sumaria* que presentó el apelado y No Ha Lugar la *Oposición a Solicitud de Sentencia Sumaria* presentada por Windmar. Por consiguiente, ordenó a Windmar el retiro inmediato del sistema fotovoltaico instalado en la residencia del señor Cabrera Umpierre, a los fines de permitir que este pueda llevar a cabo las reparaciones necesarias en su hogar sin que se afecte la garantía pactada en el contrato. Además, ordenó el pago de $51,350.44, por los daños económicos ocasionados, quedando pendiente por adjudicar los daños emocionales y angustias mentales reclamados.

Inconforme con lo resuelto, Windmar acudió ante este foro intermedio mediante el recurso de epígrafe, en el que señaló la comisión de los siguientes errores:

> Erró el TPI al hacer determinaciones de hechos que no fueron sustentadas en la solicitud de sentencia sumaria presentada por el apelado.

> Erró el TPI al ordenar el pago de daños económicos sin haber considerado ni haber tenido ante sí prueba de que la parte apelada hubiera mitigado los daños alegados.

**-II-**

**A. Sentencia Sumaria**

Las Regla 36 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 36, instituye el mecanismo de sentencia sumaria a nuestro ordenamiento jurídico. En particular, su función es permitir que cualquiera de las partes pueda mostrar, previo al juicio y luego del descubrimiento de prueba, que no existe una controversia material de hecho que deba ser dirimida en un juicio plenario; y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para disponer del caso ante sí. 32 LPRA Ap. V, R. 36.1-36.2; *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 784-785 (2016).

En ese sentido, la parte promovente de la solicitud debe demostrar la inexistencia de una controversia de hecho material por medio de una moción fundamentada, mientras que la parte promovida debe mostrar que existe controversia de algún hecho material sobre la totalidad o parte de la causa de acción. *Rodríguez Méndez v. Laser Eye,* supra, pág. 785. Además, la parte promovida no puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar evidencia que demuestre la existencia de controversia sustancial de hechos. *Id.* Sin embargo, ninguna de las partes puede enmendar sus alegaciones a través de la presentación de una sentencia sumaria o su oposición. *León Torres v. Rivera Lebrón*, 204 DPR 20, 47 (2020).

Así pues, para que el tribunal pueda adjudicar en los méritos una controversia de forma sumaria, es necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y cualquier otra evidencia ofrecida, surja que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente. 32 LPRA Ap. V, R. 36.3(e).

En cuanto a los hechos esenciales y pertinentes, también conocidos como hechos materiales, son aquellos que pueden afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023). Por lo tanto, el tribunal solo podrá dictar sentencia sumaria en los casos en los cuales tenga ante su consideración todos los hechos materiales para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. *Id.*

Conviene destacar que el Tribunal Supremo ha dispuesto que, el foro apelativo se encuentra en igual posición que el Tribunal de

Primera Instancia para evaluar la procedencia de una solicitud de sentencia sumaria. *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020). *Meléndez González et al. v M. Cuebas*, 193 DPR 100, 115 (2015). Además, el Alto Foro estableció el estándar específico de revisión que debe utilizar el Tribunal de Apelaciones, a saber: (1) examinar de *novo* el expediente, de la manera más favorable a favor de la parte promovida, y aplicar las disposiciones de la Regla 36 de Procedimiento Civil, *supra* como su jurisprudencia interpretativa; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificada en la Regla 36.4 de Procedimiento Civil, *supra;* (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, exponer concretamente los hechos materiales controvertidos e incontrovertidos; y (4) de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar de *novo* si el foro primario aplicó correctamente el derecho a la controversia. *Meléndez González et al. v M. Cuebas,* supra, págs. 117-119. Además, el foro apelativo en su revisión está limitado a lo siguiente:

> *[P]rimero*, sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación *exhibit*[s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. *Segundo*, el tribunal apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia. *Id.,* pág. 114-115.

## B. Teoría general de contratos

El contrato nace a la vida jurídica cuando "dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Artículo 1230 del Código Civil de 2020, 31 LPRA sec. 9751; *Unisys Puerto Rico, Inc. v. Ramallo Brothers,* 128 DPR 842, 852 (1991); *García Reyes v. Cruz*

*Auto Corp.*, 173 DPR 870, 886 (2008); *Collazo Vázquez v. Huertas Infante*, 171 DPR 84, 102 (2007). Los requisitos para la perfección de un contrato son: (1) consentimiento de los contratantes; (2) objeto cierto, y (3) causa lícita. 31 LPRA sec. 9771; *García Reyes v. Cruz Auto Corp.*, supra, 885; *Rivera v. PRAICO*, 167 DPR 227, 232 (2006). Cuando coexisten estos elementos, un contrato es mandatorio en la manera que se haya celebrado. 31 LPRA sec. 6161.

En nuestro ordenamiento jurídico, impera el principio de libertad de contratación que le permite a las partes pactar las cláusulas y condiciones que entiendan, siempre que estas no sean contrarias a la ley, moral u orden público. *Id.*, sec. 9753; *Guadalupe Solís v. González Durieux*, 172 DPR 676, 683 (2007); *Álvarez v. Rivera*, 165 DPR 1, 17 (2005); *Torres, Torres v. Torres Serrano*, 179 DPR 481, 493 (2010); *Oriental Finances Services v. Nieves*, 172 DPR 462, 470-471 (2007). Entonces, el contrato "queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva". 31 LPRA sec. 9771; *Collazo Vázquez v. Huertas Infante*, supra, pág. 103; *López v. González*, 163 DPR 275, 282 (2004).

A tales efectos, existe un principio conocido como *pacta sunt servanda* o la autonomía de la voluntad que supone la obligatoriedad de lo acordado según sus términos y condiciones. 31 LPRA sec. 9754; *Utility Consulting Services v. San Juan*, 115 DPR 88, 90 (1984); *Banco Popular v. Sucn. Talavera*, 174 DPR 686, 693 (2008). Dicho de otro modo, "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". *VDE Corp. v. F & R Contractors*, 180 DPR 21, 34 (2010); *López v. González*, supra, pág. 281.

**C. Daños Civiles Extracontractuales**

La reclamación por daños civiles extracontractuales tiene su origen en el Artículo 1536 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10801. En lo pertinente, el referido estatuto dispone que "[l]a persona que culpa o negligencia causa daño a otra, viene obligada a repararlo". *Id.* De este modo, la parte que promueve una causa de acción bajo los preceptos de este artículo debe establecer: "(1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión cual tiene que se ser culposo o negligente". *Pérez et al. v. Lares Medical et al.,* 207 DPR 965, 976 (2021); *López v. Porrata Doria,* 169 DPR 135, 150 (2006).

En cuanto a la culpa o negligencia que debe probarse, se considera que esta comprende la falta del debido cuidado, lo cual se compone de "no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *Pérez et al. v. Lares Medical et al.,* supra, pág. 977; *López v. Porrata Doria,* supra, pág. 151, citando a *Toro Aponte v. E.L.A.,* 142 DPR 464, 473 (1997). De este modo, nuestro ordenamiento jurídico considera que el criterio central que se debe evaluar al adjudicar responsabilidad por culpa o negligencia es el deber de previsión. *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 484 (2022). "Para determinar si el resultado era razonablemente previsible es preciso acudir a la figura [de la persona] prudente y razonable, que es aquella persona que actúa con el grado de cuidado, diligencia, vigilancia y precaución exigidos por las circunstancias". *Pons v. Engebretson,* 160 DPR 347, 355 (2003); *Monllor v. Soc. de Gananciales,* 138 DPR 600, 604 (1995). No obstante, el deber de previsión no se extiende a todo riesgo posible, sino que debe evaluarse si era posible anticipar las consecuencias de una acción o inacción determinada. *Montalvo v. Cruz,* 144 DPR 748, 756 (1998).

**-III-**

Para el apelante, el foro apelado erró al resolver la controversia de manera sumaria, sin tomar en cuenta que los hechos propuestos por el apelado como incontrovertidos no estaban sustentados por la prueba sometida. Añade que, mediante su oposición, presentó tres hechos esenciales que no fueron mencionados por el apelado en su petición y que demuestran que el señor Cabrera Umpierre intervino con el sistema de placas solares instalado por Windmar sin haber obtenido autorización para ello. En su opinión, este hecho controvierte el origen real de los daños o "de haberlo cau[s]ado fue agravado por un tercero".

Aduce, además, que el foro primario incidió al ordenar el pago de los daños económicos reclamados sin considerar que la parte apelada no mitigó los daños.

Por su parte, el apelado sostiene que cada uno de los hechos incontrovertidos que expuso en su solicitud de sentencia sumaria estaban sustentados por la prueba presentada. Aduce que así lo determinó el tribunal apelado al esgrimir 61 determinaciones de hecho sustentadas por la evidencia que presentó en su petición de sentencia sumaria. Añade, que en su oposición el apelante no controvirtió ninguno de los hechos que desglosó, por lo que procedía se dictara sentencia sumaria a su favor.

En cuanto al argumento sobre la falta de mitigación de los daños alegados, el apelado asegura que su alegación parte de una premisa equivocada, pues el propio contrato suscrito por las partes establece que el señor Cabrera Umpierre no podía "hacer reparaciones al problema, so pena de perder la garantía del sistema". Veamos.

Tras examinar de *novo* el expediente, concluimos que la *Moción en Solicitud de Sentencia Sumaria* que presentó el señor Cabrera Umpierre cumplió con los requisitos de forma que dispone

la Regla 36.3 (a) de Procedimiento Civil, *supra*. En su petición, pudimos observar que la parte apelada incluyó una exposición breve de las alegaciones de las partes, los asuntos en controversia, la reclamación o parte respecto a la que se solicita la sentencia sumaria y una relación concisa y organizada, en párrafos enumerados, de todos los hechos esenciales sobre los cuales no existe controversia, con indicación de los documentos admisibles en evidencia que lo sustentan. Además, expuso los argumentos que proceden en derecho y el remedio solicitado.

Por el contrario, aunque la *Oposición a Solicitud de Sentencia Sumaria* cumplió con la mayoría de los requisitos de forma que dispone la Regla 36.3 (b) de Procedimiento Civil, *supra*, esta falló en controvertir los hechos que propuso la parte apelada. Más bien, se limitó a esgrimir aseveraciones acomodaticias que fueron insuficientes para refutar los hechos esenciales desglosados por el apelado. Además, hizo referencia a prueba que no sustentaba sus alegaciones. Tampoco presentó declaraciones juradas u otra evidencia admisible que las apoyaran.

Por tanto, los hechos incontrovertidos por el apelado se dan por admitidos, conforme dispone la Regla 36, *supra*. Procede entonces examinar si el foro de instancia aplicó correctamente el derecho a la controversia presentada.

Ciertamente, las alegaciones admitidas, en conjunto con la prueba sometida, demuestra que Windmar no solo incumplió con las cláusulas del contrato suscrito, sino que también falló al no llevar a cabo una instalación adecuada, así como al no proveer la reparación que exigían las circunstancias del caso, lo que provocó los daños reclamados por el señor Cabrera Umpierre.

Tanto las declaraciones juradas, los reportes de Windmar, como la cotización del experto contratado por el apelado corroboran el daño ocasionado durante la instalación del sistema fotovoltaico y

la falta de diligencia adecuada por parte de Windmar para corregirlo. Así que no erró el tribunal apelado al adjudicar la negligencia de Windmar y determinar la cuantía por los daños ocasionados por la suma de $51,350.44.

Por último, la parte apelante no puede alegar que el señor Cabrera Umpierre no mitigó los daños, pues este estaba atado de manos por la cláusula 11 del contrato suscrito que, específicamente, dispone que "[c]ualquier trabajo o mantenimiento no autorizado por el VENDEDOR que se efectúe al sistema, invalidará la garantía de la mano de obra del VENDEDOR". Por consiguiente, le correspondía a Windmar atender la situación de filtración reportada tras la instalación defectuosa de las placas solares en la residencia del señor Cabrera Umpierre.

**-IV-**

Por los fundamentos que anteceden, se confirma la *Sentencia Parcial* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones